May it please the Court, my name is Byron Keeling. Along with Brad Hoover, I represent the appellants, Jay Williams, Swiss Community, Swiss Investments, and SC2GP. I'll first address the breach of contract issues in this case, and then as time permits, I'll address the economic loss rule. The District Court in this case relied on this Court's opinion in Villarreal for the proposition that a party in default on its payment obligations cannot maintain a claim for breach of contract. I find myself in the difficult position of arguing to this Court that the Villarreal case misstates Texas law. But respectfully, I think the Villarreal case takes what the Texas Supreme Court intended to be a general rule and elevates it into an absolute rule. When did the exceptions to that rule first get presented to the District Court? I think they were presented in the District Court in response to the motion for reconsideration. Well, the District Judge's opinion doesn't refer to any of them in that the exceptions about materiality versus independent, all that, was presented to the District Judge? Yes, I am. So if I looked at the briefing prior to the reconsideration, I wouldn't find it. But if I looked at the time of reconsideration, I would. I think so. The reason why these issues got compressed into the tail end of the case is that the Texas Supreme Court opinion in Dobbins and this Court's opinion in Villarreal weren't even raised until the motion for reconsideration. And at that point in time, the plaintiff's principal answer in response to that was simply to say, well, wait a second, this isn't a proper motion for reconsideration. Nonetheless, the party certainly, the plaintiff certainly raised the issue that there was no material breach and, unquestionably, the plaintiff's raised the issue that a party's default does not bar the party from enforcing, through a breach of contract claim, the specific provisions of a contract that specify the remedies for a default. And those two issues form the basis, really, for the two primary issues that we raised on the breach of contract issue in front of this Court. Let me just make sure you understand the context of my question. We review what a If he was blindsided, we're not going to, blindsided on appeal, we're not going to go along with that. So you're telling me that these additional issues were before the district judge at the time, at least, of the reconsideration. I'm not asking you to look for page, chapter and verse, all that. Yes or no is all I really need on that. It was before the district judge and, perhaps, therefore, properly in front of us. I believe so, Your Honor, and I will cite a page from the record. I think these issues were raised, page 3265 from the record on appeal. Which is reconsideration. Which is in response to the motion for reconsideration. Right. So not in the initial case. Well, none of these issues were before the district court at the time that the district court originally denied the defendant's motion for summary judgment and granted our motion for summary judgment. The Villarreal issue came up for the first time when the defendants raised it, post the district court's original opinion in memorandum order in this case. The only time at which the plaintiffs could respond to those issues was in response to the motion for reconsideration. This court's opinion in Villarreal relies on, as I said, the Texas Supreme Court case in Dobbins, a 1990 case. The Texas Supreme Court, to be fair, in Dobbins did say that a party who is herself in default cannot then sue on contract. However, the court in Dobbins went on to say that that very rule is ameliorated by the concept of substantial performance. Substantial performance is, under Texas law, the equivalent of performance. So what the Texas Supreme Court emphasizes is that a party who has substantially performed cannot be in material breach of that contract. Since Dobbins, the Texas Supreme Court on multiple occasions, most notably Mustang Pipeline, has emphasized that only a material breach will excuse the other party from performing on a contract. This court has itself emphasized the same thing in a case post Villarreal, United States v. Meade. If only a material breach will excuse a defendant's performance, then it should equally be true that only a material breach will bar a plaintiff from pursuing a claim for breach of contract. The defendant's continued duty to perform after a non-material breach is meaningless if the plaintiff has no ability to enforce a violation of that duty for a breach of contract claim. In Meade. Can I stop you one second? I just want to be clear about this. What is the standard of review here since it was raised in a motion for reconsideration? I guess two questions. One, what's your best case that the district court was obligated at that point to consider the motion for reconsideration? And two, assuming that he was required to, what's the standard of review in the district court? What's the standard of review here? My argument is that the district court was not obligated to consider the motion for reconsideration at all. The plaintiffs had already won in district court. It was on the basis of the defendant's motion for reconsideration that raised the Villareal issue for the first time that the district court then issued a completely different result, and the effect of the district court's different result was to grant summary judgment in the defendant's favor. So the standard of review in front of this court is the fairly typical standard of review for summary judgment. Well, what of the issue here that the district judge had overlooked a pending motion and he needed to rule on it? That's correct. That is an issue. So it's not just a motion for reconsideration. It's pointing out to the district judge, wait a minute, there's something here you missed. That is correct, but the issue that the district court missed was solely Wells Fargo's stand-alone motion for summary judgment. So the issue that the district court missed only went to Wells Fargo's specific issues on whether it was a party to the deed of trust and whether the economic loss rule applied. The Villareal issues were first raised by the defendants in a joint motion for reconsideration after the district court had already granted the plaintiffs itemization damages. Now significantly in Muir, this court recognized that whether or not a party breaches a contract materially is a question of fact, not a question of law. The court in Muir noted that a court should consider five factors, the Mustang pipeline factors, in determining whether it breaches materially. The district court considered none of those factors. The district court did not find that the plaintiffs had materially breached the deed of trust. The district court concluded simply, relying on Villareal, that a party's default on a contract bars it from pursuing a breach of contract claim. Under Muir and under Mustang pipeline, a Muir default in and of itself is insufficient to bar a plaintiff from pursuing a breach of contract claim. Even if the plaintiffs were in material default, the plaintiffs still would be entitled to enforce the foreclosure notice obligations in section 43 of the deed of trust. And that's because the Dobbins rule applies, as this court has recognized, in international communication. The Dobbins rule only applies in cases involving mutually dependent promises, not independent promises. And Judge Sothwick, I'll acknowledge that in the district court, the plaintiffs never used the words dependent or independent. What the plaintiffs did do, though, is they repeatedly made the argument, citing a multitude of district court cases, including the Northern District case in Franklin, that contract provisions that specify a remedy for default are enforceable even after a material breach. On appeal to this court, we've taken those cases and we've identified the rule out of those cases. The reason why the court in Franklin reached the result that it did is because contract provisions that specify the remedy for a default are independent promises. They are independently enforceable even after a material breach of contract. And we know this because the Texas courts have themselves recognized exactly that proposition. I cited the Tennessee gas case in my brief to the court. The Tennessee gas case was an unpublished case. However, Tennessee gas has been applied in a published case, Gulf Liquids, 356 Southwest 3rd 54. The courts both in Tennessee gas and Gulf Liquids dealt with a situation where a property owner's material breach of a construction contract led to a lawsuit and the property owner then sought to enforce, through litigation, the contract provisions specifying the property owner's remedy or the contractor's remedy for the property owner's default. The courts both in Tennessee gas and in Gulf Liquids concluded that the property owner could properly do that. To hold otherwise, they said, would render those provisions meaningless. That's exactly what the northern district in the Franklin case ruled. Can you also move to the argument that you lost your wrongful foreclosure claim? It seems like to me you could have gone in and said, wait a minute, we didn't get notice, this is wrongful foreclosure, let's set it aside. We sued on a wrongful foreclosure claim. Wrongful foreclosure claim has a limited remedy and that limited remedy is the type of damages that were not the type of damages that we were seeking to recover for lost income tax credits. Well, but if you've been successful on setting aside the foreclosure, then it would have been reset and it would have started over. So it seems like to me you needed to win that wrongful foreclosure suit to now come in and say you're entitled to these tax credits. Well, and respectfully, Your Honor, the defendants have argued that our exclusive remedy is a wrongful foreclosure claim. And candidly, they've identified no case that says that and Texas cases have held to the contrary. Texas cases have explicitly recognized that a plaintiff in our shoes can bring either a breach of contract claim or wrongful foreclosure claim so long as the plaintiffs can prove the elements of either or both claim. Even if this court were to find that Villareal was binding on the district court, we would, of course, respectfully ask the court to certify those questions to the Texas Supreme Court. Regardless, at a minimum, I believe that the court should reverse the district court's judgment against Wells Fargo. Wells Fargo itself argues that it was not a party to the deed of trust. It argues that it shared contractual privity only with Fannie Mae and exercised its obligations in this case solely on the basis of its contractual relationship with Fannie Mae. That brings Wells Fargo squarely within the rule that the Texas Supreme Court announced in Chapman Custom Homes. In Chapman Custom Homes, the Texas Supreme Court reaffirmed its full decision in Scharenbeck. In Scharenbeck, the Texas Supreme Court was faced with a situation where an electrician had caused a fire in the exercise of a repair contract. The Texas Supreme Court ruled in that case that the plaintiffs could pursue a claim in negligence against the electrician. Citing Scharenbeck, the Texas Supreme Court in Chapman Custom Homes ruled that the negligent performance of a contract that proximately causes a property or personal injury loss to a reasonably foreseeable plaintiff sets a negligence claim.  Wells Fargo itself said that it had only a contract with Fannie Mae. Under that contract with Fannie Mae, Fannie Mae looked to Wells Fargo to provide correct addresses which Wells Fargo knew were to be used for the purposes of a foreclosure notice. Wells Fargo provided incorrect addresses. It was reasonably foreseeable to Wells Fargo that those incorrect addresses would proximately cause injury to someone who otherwise might have been able to respond to the foreclosure notice. And that caused a property loss to my clients, the loss of the Swiss Village apartment complex and the tax credits with respect to the apartment complex. That brings the case squarely within Chapman Custom Homes. So the Supreme Court, Texas, has held that if the agent, who is not bound by any contract with the homeowner, with the plaintiff, is negligent in performing its agreement with Fannie Mae, there's a cause of action then by the plaintiff? That's correct. Specifically in Chapman Custom Homes, the Texas Supreme Court ruled that the negligent performance of a contract between these two, if it then proximately causes damages to a non-contracting party, and those damages are in the form of a property loss or a personal injury loss, not a pure economic loss, then the damages are properly recoverable in negligence. That's interesting. I wasn't aware that was the law, and this case will give me a chance to find out. I think the Chapman case surprised a few people, Herman. Because I don't see any obligation as of now before your educational contribution between Wells Fargo and your client. Thank you. I see my time is up. I'll reserve my remaining time for rebuttal. May it please the Court, Counsel. My name is Paul Simon, and I represent Fannie Mae. During my time today, I'm going to discuss the following points. First is that the notice of default and notice of foreclosure were good as a matter of law. Second is that the borrower's default was material as a matter of law, the four or five mispayments. The third is that their claim for breach of contract fails as a matter of law. And the final on time permitting, I want to talk about the tax credits and why the recapture of those tax credits are an improper measure of damages as a matter of law. Judge Owen, you raised the issue, and as I understood your question, what's the standard of review for Judge Harmon's decision to essentially reverse course and grant the motion of reconsideration? I think the standard for her decision to do that is abuse of discretion. She had plenary power during that time. There was no judgment, as Judge Salpo pointed out. And I think the judge was free to do that. The cases which talk about the door has been closed is once the final judgment has been entered. And as of that date, when Judge Harmon essentially reversed herself and said, we're going to throw out the claim for breach of contract, which was the only remaining claim, she had plenary jurisdiction. She could have done as she chose. The two issues that remain in this case, as Judge Reveley pointed out, one is negligence as to the Wells Fargo, which I believe Mr. Joyce had discussed during his time. And the other one is the breach of contract deed of trust claims that apply to, I think, both appellees. In this case, the notice question is a pure question of law, and that's because of the deed of trust. The deed of trust does two things which are, I think, significant and fatal to the appellant's arguments. First, it states where the notices of default and foreclosure must be sent, and that's to an address on Woodway. And there's no dispute that as to the borrower, that's where the default and foreclosure notices were sent. And then second, it sets the standard by which to judge if the parties, in this case the appellants and the borrower, effectively changed that notice. Section 31 of the deed of trust says if you want to change your address, you can do that, but the way you do it. What about Section 45? Well, I think 43, I think it is, Your Honor. I think that interplays with Section 31. Section 43 says you're going to go by whatever's in your records. And I think what you have to do is read that, as courts are required to do when looking at two provisions of the same contract, in conjunction with Section 31. So Section 31 says here's your address. If you want to change it, provide it in writing to the lender if it's the borrower. The lender can provide it to the borrower if it's the lender. So the borrower is required to change it in writing. And imagine the problem that a lender faces if we're going with verbal changes or other forms of changes that perhaps there's a legitimate reason why the property manager wants to get some notices and not others. That's the problem in this case. There are four addresses at least that the borrower claims at some point or another were valid. Well, but you have at least specific over general, maybe other rules here, the specific section of the agreement deed of trust for acceleration is the one that wasn't followed in this case, and you want to use a different part of the deed of trust. I don't want to use a different one, Judge Southwick. I think what you need to do is read 43 in light of 41. You want to read them together. Pardon me? You want to read them together, but rule, I mean rule. Section 43 says the proper address to use is a debtor's most recent address as shown by the records, not by what Section 31 says or whatever else. I mean you can go on with your argument. It's in your brief, but I just find it a little hard to accept that 43 isn't the be-all, end-all on where the address needs to be found. Well, and the problem would be this. If we had sent it to the addresses which they now claim are the proper addresses, the P.O. Box and the Britmore address, they could just as easily argue, hey, we never changed our address in accordance with Section 31. Why are you sending it there? You should have been sending it to the Woodway address. The lender needs a bright line that says, look, this is where we're going to send notices of default and foreclosure, and you read 43 to say it's the most recent address which would be the deed of trust address because the deed of trust has the actual address unless it's modified in accordance with the deed of trust. 43 says the most recent address according to the lender's records. It doesn't say one particular document. It says look at the lender's records, what's in there, what's the most recent address from the borrower, and so if something hasn't been changed in a certain way, but the lender knows that the address has been changed according to the record, that's what has to be followed. It seems to me whatever kind of uncertainties that may arise from that, there's been no evidence in this case that that kind of uncertainty exists here. The right address was in the lender's records and it wasn't used. Well, I think Koehner and the Schlott opinion, which I don't know if we cited in our brief, but it's another Texas case from Beaumont, which I can give the court the site. It's 2012 Westlaw 195-1125. They both say in substance that if there's a deed of trust that says here's how you're supposed to change the address, then that controls over the property code. And in Koehner, the borrower— Controls over the property code? Which has a similar notice provision about the last— I didn't hear what you said. Yeah, yeah, over the property code, which has that similar language about the last address according to the lender's records, very similar to what 43 says. And Koehner says, look, if that's what your deed of trust says, is that you're supposed to change it in writing, then Mr. Koehner, an oral change didn't count. And in Schlott, it was even more harsh. In Schlott, the rule, the deed of trust said if you want to make a change, you have to send it to us by first-class mail. In Schlott, the borrower sent it by fax. And the court said that didn't change it in accordance with your deed of trust. Therefore, the notices weren't defective. And that's essentially what we've got going on here. As the party claiming that it complied with the deed of trust, I think it was their burden to prove, and that's what the Koehner case says and the Schlott case, that they did in fact comply with Section 31. As the Ashton Court said, which we cite in our brief, it's commercially unworkable when you've got, in this case, four addresses that we had to give notice to, the two principals, WNC Taxon and the borrower, to be guessing at where you should be sending those notices. I think Judge Harmon, she obviously disagreed with it, but I think that's where this argument should begin and should end. What Judge Harmon did find is that the borrower's failure to make payments was a capital E event, capital D default of the loan agreement, both the promissory note and the deed of trust. And the appellants argue, well, it wasn't material. And they essentially cite their performance for nine years on the loan, that they made nine years or ten years of payments on the loan. That has nothing to do with substantial performance. The Matador v. Post case says substantial performance is when you've basically completed the contract, not that you've been doing it for a long time. In this case, we had a $3.5 million loan that still had more than $3 million owed on it at the time of default. We know it's a material default because of the remedies that the deed of trust and note provide for. They provide for acceleration without prior notice. They provide that there is no cure for a payment default. And they provide for the remedy of foreclosure. And so when the appellant says, well, we substantially performed, I don't think substantial performance has any business in this case. The lender says I'm giving you $3.5 million as a loan, and the deal is that the borrower is going to pay that back pursuant to a schedule with interest. And when it fails to make three or four monthly payments on purpose for the purpose of some internal politics that were going on with the borrower, that is a material breach. The borrower knew about it, and the loan documents provide for that. Judge Southwick, I think you brought up the question about independent and dependent promises, and this kind of goes to what we were talking about with Section 43 and Section 31. I think where they've got this wrong is that the borrower's obligation to change its address pursuant to the deed of trust is in Section 31. The lender's obligation under Section 43 follows from when the borrower does have an accordance with Section 31. In other words, that's the independent and dependent promises. The dependent promises are borrower says, I'll change my address in accordance with Section 31. And then if I do that, then the lender has an obligation under Section 43 to provide the notice to that address. And 43 could easily have said, I don't spend too much time on this point, I'm sure, but it does seem to me Section 43, if that's what it means, could simply have said the most recent address as presented by the borrower under Section 31. But it didn't say that. It said more generally the lender's records, and there was a more recent address. But really, there are other issues to cover. This may not be your winning issue. You may need to cover some of the others. Well, I just want to point out what I started to reference earlier, was that this mischief that the borrower is engaging in here puts the lender in the untenable position of trying to guess, where am I supposed to send this to? Am I supposed to send it to this address or to that address? I've got four people I have to put on notice. I've got four addresses for one individual, two or three for another individual. It shouldn't be that type of guesswork, and that's what the Ashton Court says. The final thing that I'd like to cover is this idea of whether there is a contractual right in this context of a wrongful foreclosure case. And I'm not aware of, well, let me start up this way. Wells Fargo, the Villa Real case that opposing counsel spent some time on, and the Choey v. Bank of America case, Judge Owen, you were on that panel. Those are both 12B6 cases, and what they say is if the borrower fails to make its payment, whether that's an element of the borrower's claim to prove a breach of contract or whether that's a defense that needs to be pled by the defendant, if the borrower doesn't make a payment, it cannot sue for a breach of contract. That's what the Villa Real case held. That's what the Choey case held. And there is another case, Payne v. Wells Fargo, which is a summary judgment case. Judge Owen, you were also on that panel. In that case, this Court affirmed a summary judgment which dismissed the borrower's breach of contract claim because the Court found that the borrower's prior payment default precludes her breach of contract claim as a matter of law. All three of these cases, two in a 12B6 context, one on a summary judgment, say in substance the same thing. A failure to make your payment is a material breach. And if you're in material breach of your own contract, you can't then sue for breach of contract. And I think the one thing that Judge Owen also pointed out is that this is really more of a wrongful foreclosure case if that's what they wanted to do. But as the appellants point out, they can't get there because of what they're trying to claim, which are these low-income housing tax credits, as their damages. And that's the final point that I'm going to talk about is the low-income housing tax credits. There is no case that I could find that the appellants could find which talked about low-income housing tax credits as being a remedy for damages in a wrongful foreclosure type of case, whether it's under a breach of contract heading, wrongful foreclosure heading, or any other heading. Well, let me ask. I still don't have a conceptual problem here. It probably doesn't come in under the law. They were in breach of their obligations to pay on the note. Foreclosure was appropriate. There are certainly defenses to foreclosure if they had gotten notice. It seems to me there's a causation question here. Are they going to lose their tax credits if it had been a proper foreclosure unless they can prove otherwise? Is that at all relevant here? Does this come into play insofar as damages? Yes, you didn't give proper notice to the right. Maybe we could find you didn't give proper notice to the right address, and they could have participated in the foreclosure. But we don't put them back to where they were if you set aside the foreclosure. They're still in default. So how does that play into damages? Well, I think it does. I understand that's half of what you're saying. There's also another level. They lost the tax credits, and that's the damages they're seeking. But they were going to lose them with a proper foreclosure. So how does that—that's what I'm asking. How does that fit in under causation? Well, and not to deflect from your question, but they're not really suing for the tax credits themselves, the loss of those. They're suing for the recapture of those credits which were used by Fannie Mae and then repaid by Fannie Mae to the IRS with interest. So the tax credits were, quote, lost, if you will, early on in the process when they originated the loan and sold those tax credits to Fannie Mae in order to get a reduced loan amount. Fannie Mae purchased those tax credits for a reduced price because they're a dollar-for-dollar credit. So everybody kind of won. And the borrower sold that stuff or assigned that to Fannie Mae ultimately. So that's the problem with their recapture argument as damages because it would be like selling real or personal property once you've sold it or assigned it to somebody else and that thing becomes damaged or lost or destroyed through the negligence or breach of contract or whatever by somebody else. The original owner can't come back and say, well, I get the damages on that thing. They've already gotten their benefit when they sold these tax credits at the beginning of the transaction. And as Your Honor points out, there is a causation problem because they're still going to be in default. There's also a ready, will-enabled problem that counsel didn't address. They do in their brief, which is because of the acceleration, they would have had to come up with a $3.5 million or $3 million plus to pay that accelerated debt. If they weren't able to do that, the foreclosure still would have gone through, and that gets to Your Honor's causation problem is at some point or another they were going to lose this property, and it was once they lost the property that they would lose the right to claim those tax credits to the extent that they weren't already claimed or weren't already assigned, but they were, or in the event of Fannie Mae, the recapture of those tax credits. Why don't you get back on track with the time you have left? Well, what I was going to say is that on that final piece of the tax credits, there is no evidence, in addition to I think that it's an improper measure of damages, the LIHTC, there is also no evidence that any tax credit recapture was paid by any appellant. All they said is, look, there's $1.7 million approximately of tax credits that we received, which we then assigned out, and we think we can do what we want to internally with those, which they can't. But there's no evidence that they actually paid that, so they're actually asking for damages for something that they didn't suffer, a loss that they didn't actually suffer. And with that, I see my time is out. Thank you. Mr. Joyce, I know you've got a summer judgment against your client, but I thought it was on the same reason they sued Fannie Mae. I didn't know it was a lawsuit for your client not performing its obligation to Fannie Mae. Judge Reveley, you're correct. When Judge Harmon first entered a summary judgment against Fannie Mae and Wells Fargo, it was on the theory that we had breached the deed of trust as a breach of contract claim. She had no trouble throwing out the negligence claim before that under the economic loss rule. I want to speak to that briefly. When I first got in this case, I thought the damage question was the most interesting. You could look at it as causation. You could look at it, is it too remote to be the thing of a wrongful foreclosure claim? There's a lot of reasons that a debtor should not be suing for lost tax credits when there's been a foreclosure. There's lots of ways to go at it. I think the real reason is, Judge Owen, in the Choe case that Your Honor was on, the court had no trouble saying there, we see no Texas case which says failure to strictly comply with the foreclosure requirements in the deed of trust is a breach of contract claim. And I think that cuts the underpinnings out from the whole case. There's a lot of law swirling through here. There's a lot of causes of action. But if somebody has been wrongfully foreclosed on, Texas has a wrongful foreclosure cause of action. We've had it for 100 years. It's easy to know what it is, but it's more restrained and the remedies are more restricted. But you can't create new causes of action to go against exotic damages. To me, the overview for Wells Fargo is all about legal duty. To whom did we owe whatever duties we were in this whole scenario for? We were the servicer. We operated for the lender. That was Fannie Mae. We were not the agent for the borrower. We weren't the agent for the trustee, which was a group of lawyers from a firm called Winstead. We owe duties to Fannie Mae. And if we did something wrong to Fannie Mae, that's Fannie Mae's issue, but it's not the borrower's issue. We didn't sign the deed of trust. We're not a party to the deed of trust. The deed of trust imposes no obligations on us that run in favor of the borrower. They all run in favor of Fannie Mae. On the negligence per se claim, their reason to say we have a duty is the Texas Property Code, which deals with foreclosures. You could read that far and long, and the only thing in there about loan servicers doing anything for the borrower is if there's a residential foreclosure. And they cite this in their reply. They cite the residential foreclosure statute. The statute says the loan servicer will give notice at least 20 days before an acceleration no matter what the document says. That's the only thing in the property code that puts a legal duty on a loan servicer, period, paragraph. So for negligence, we owe no legal duty. The cases have struggled with the contort theories that were going on in Texas forever. How do we know what's a contract claim or a tort claim? We can look at it as legal duty. Another analysis is the economic loss rule when we're dealing with torts. If all you have here are the same damages against Wells Fargo for negligence that you have against Fannie Mae for breach of the deed of trust, that's an economic loss. He cites the Chapman case, but the Chapman case says you have to have personal injury or property damage. Losing the economic value of your tax credits is not a property damage. And, Judge Reveley, when you look at the Chapman case, as counsel suggested, you're not going to see that Wells Fargo owed a duty, and this is just simply an attempt to blur the lines between commercial, transactional contract claims. Remind me, was Chapman where they started the fire and it jumped to the other person's house? I think that's what it was, but there was property damage. Some property was actually damaged or hurt. I thought some was burned down, but yeah. Yes. Here what we have is an economic tax credit. That's all they're asking for. That's a purely economic loss. There should be no negligence claim. Thank you. Four brief points. Number one, Judge Southwick, you raised a question about causation on damages. That may be an appropriate issue for the district court to take up on remand. It was at no point raised in the district court, nor even in defendants' brief on this appeal, nor have the defendants ever made an argument about the remoteness of damages. Their argument on damages is solely that, from their point of view, Swiss community did not suffer them, and the district court roundly rejected that argument. They lost on that argument. The district court explained at length that the proper plaintiff on those damages was Swiss community. Swiss community, as the partnership, suffered the damages. Ultimately, the damages may flow to individual partners, but under Texas law, it's the partnership that suffers the damages. Counsel for Fannie Mae begins with another argument that the district court roundly rejected, and that's the argument that the defendants properly complied with the notice requirements for foreclosure. The simple fact is that Section 43 says what it says, and there's no question, none at all, from the evidence that for a period of over 10 years, both Wells Fargo and Fannie Mae were delivering notices and bills and statements properly to the plaintiffs at their PO Box address or at their Britmore address. They certainly knew that those addresses were the most recent addresses for Swiss community. To argue now that somehow the law hampers them or puts them in a difficult position is just contrary to the evidence in the case that shows that they knew exactly where to send notices and did so over a period of years up to the point where they finally sent a notice of foreclosure to the wrong place. Counsel for Fannie Mae argues that this court's precedent necessarily holds that a borrower's default on its payment obligations necessarily means that the breach was material. Once again, though, the defendants didn't make that argument in the district court, nor did the district court so far. The defendants' argument was purely and simply, district court, look at Villarreal. Villarreal says that a default, standing alone, means that the plaintiff can't sue for breach of contract. And that's what the district court held. The district court said, I'm bound by Villarreal. In fact, that is what Villarreal said. And as I said from the outset, I find myself in the difficult position of arguing to this court that Villarreal misstates Texas law. But again, respectfully, I think Villarreal is contrary to Mustang Pipeline, it's contrary to cases post-Villarreal like Petco Construction, and it's contrary to this court's opinion in Muir. And as Muir points out, for there to be a finding of whether a breach is material, a court has to address the five Mustang Pipeline factors. The district court did not do so here. Counsel for Wells Fargo argues that the fact that the plaintiffs are seeking the same damages on both their breach of contract claim and on their tort claim necessarily means that those damages bring the negligence claim within the economic loss rule. That's simply not true. That's not Texas law. Texas law asks the question of whether the tort damages are independent from a contract. That doesn't mean that a plaintiff on a contract claim can't also seek damages that are independent from the source of the contract. Plaintiffs in contract cases do that all the time. It's called consequential damages. The damages here are consequential damages. They don't stem from the contract itself. That's what makes them potentially recoverable not just on a contract claim but also on a tort claim. What do you say to what Hosenkamp said about Chapman, that you need property damage or personal injury? You certainly need property damage or property loss. Here the loss was the entirety of the Swiss military. You moved into loss. What was being said about Chapman was personal injury or property damage, not losing money. I'm not saying that's true. Do you have a response? Is that not really what Chapman says? No, my response is this court has already determined what an economic loss is. An economic loss is not a property loss, and that's this court's case in Chevron. Thank you, Counsel. We have your argument. Thank you very much.